# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5307 | **DATE** | 10/3/2003 |
| **CASE TITLE** | Antunovich vs. County of Cook | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies the County's motion for summary judgment (9). The case is set for a status hearing on 10/9/03 at 9:30 a.m. to discuss the possibility of settlement.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KATHY S. ANTUNOVICH, ) | |
| ) | **DOCKETED** |
| Plaintiff, ) | |
| ) | OCT 0 9 2003 |
| v. ) | Case No. 02 C 5307 |
| ) | |
| COUNTY OF COOK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Kathy Antunovich has sued Cook County alleging that she was fired from her position as a nurse at Cook County Hospital in retaliation for her EEO activity. The County moves for summary judgment, claiming Antunovich was dismissed because she did not have the requisite written agreement with a full-time physician to work as a nurse in County facilities. Because the Court finds several genuine issues of material fact exist, the Court denies the County's motion for summary judgment.

"Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986)). Therefore, the Court must look at the evidence "as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Id.* The Seventh Circuit has identified two ways a plaintiff alleging retaliation can
1

prevent summary judgment. *See Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Under the method salient to this case, the plaintiff must "present direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that [s]he engaged in protected activity (filing a charge of discrimination) and as a result suffered the adverse employment action of which [s]he complains." *Id.* If the evidence is contradictory, the case must go to trial. *Id.*

The parties agree that Antunovich filed five EEOC complaints and testified on April 3, 2002, on behalf of a co-worker suing the County under Title VII in *Szymanski v. County of Cook*, No. 00-CV-4737 (N.D. Ill.). Def.'s Facts ¶¶ 6, 16. Title VII prohibits an employer from retaliating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Construing the evidence in the record in favor of Antunovich, the Court finds that a jury could conclude that the collaborative agreements Antunovich needed to be able to keep her job were rescinded in retaliation for her protected EEO activity.

Antunovich has provided evidence that after she was named as a potential witness by Evelyn Szymanski, she heard two nurse coordinators say her participation in the case was disloyal and disrespectful and she did not deserve her job and should be disciplined. Pl.'s Dep. at 100-01. After Antunovich had filed two EEOC complaints, Dr. John Raba, her supervisor, called her into his office and told her that if she discussed her problems with someone outside of the department, he would have her transferred to another department–or even to an ambulatory clinic as far away as the Indiana border. *Id.* at 116-17. And five days after she testified in *Szymanski*, Dr. Russell Kelly, the acting chairman of the Cardiology Division, told her that at an April 5

2

meeting, Raba, Robert Pitzaferro, business manager for the Department of Medicine, and Dr. Brendan Reilly, chief of the Department of Medicine, had said they were "disgusted" with Antunovich and had tried to figure out "what to do with [her]" because no one "wanted to have anything to do with [her]." *Id.* at 55. He further stated that he would be replacing Raba as her direct supervisor because Raba did not want to have anything to do with her. *Id.* at 53.

On April 9, Pitzaferro sent Antunovich a letter saying Reilly had rescinded her collaborative agreement with Dr. James Calvin, a cardiologist, and giving her until April 30 to get another collaborative agreement, which she had to have to be eligible to practice in Illinois. Def. Ex. 9. On May 1, Antunovich delivered a collaborative agreement to Kelly, Reilly and Pitzaferro, but within 15 minutes Reilly rejected the agreement and suspended her. Pl.'s Dep. at 82-84. On May 22, Antunovich was discharged at a personnel hearing, of which she had not received prior notice, because she could not work without a collaborative agreement. *Id.* at 86-87; Pitzaferro Dep. at 139-42.

The County argues that Antunovich's collaborative agreements were rescinded because Reilly decided only full-time doctors could supervise nurses. But Pitzaferro testified that the collaborative agreement rejected by Reilly on May 1 met each requirement set by the County. Pitzaferro Dep. at 128. Furthermore, Antunovich has provided evidence that when Reilly rejected her collaborative agreements, they should have been forwarded to a hospital committee. Barker Dep. at 62; Def. Ex. 6. But they were not. Barker Dep. at 37-38; Pitzaferro Dep. at 133. Given that Cook County Hospital had 160 nursing vacancies when Antunovich was fired, Pitzaferro Dep. at 122-23, she had two cardiologists willing to supervise her work, Saksena Dep. at 32-33 and Calvin Dep. at 50-52, and both cardiologists could supervise Antunovich under the

3

Cook County Bureau of Health Services Policy on nurse practitioners, Def. Ex. 6, the Court finds a reasonable jury could conclude that the County found a reason to rescind Antunovich's collaborative agreements because her supervisors wanted her terminated for testifying against the County and filing EEOC complaints.

The County argues that Antunovich does not have direct evidence of retaliation because Reilly, who decided to rescind her collaborative agreements, did not know that she had testified in *Szymanski*. Def. Reply at 2-3. But Antunovich has testified that she told Kelly in person that she might have to miss work to testify in *Szymanski*. Pl.'s Dep. at 129. The following day she wrote a letter to Kelly, which she also delivered to Reilly and Raba, explaining that she had to be in court for a case that "is well known to hospital [sic] administration." Pl.'s Ex. 6; Pl.'s Dep. at 130-31. Antunovich says that she saw Reilly open the letter. Pl.'s Dep. at 131. And Reilly was present at the April 5 meeting in which everyone's disgust with Antunovich was discussed. Pl.'s Dep. at 54-55. Antunovich has introduced enough evidence to raise a genuine issue as to whether Reilly knew of her protected activity.

The Court recognizes that in *Stone* the Seventh Circuit said that "mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone*, 281 F.3d at 644. But Antunovich does not rely solely on the close proximity of the rescission of her collaborative agreements to her EEO testimony. She has also provided evidence that her supervisors told her they were disgusted with her and that her collaborative agreements fell within County guidelines. Construing the evidence in the light most favorable to Antunovich, the Court concludes that a reasonable trier of fact could find in her favor.

4

## Conclusion

For the reasons stated above, the Court denies the County's motion for summary judgment [docket # 9]. The case is set for a status hearing on October 9, 2003 at 9:30 a.m. to discuss the possibility of settlement.

```
                                   _____
                                          MATTHEW F. KENNELLY
                                          United States District Judge
```

Date: October 3, 2003